**BANKHEAD ENTERPRISES, INC., d/b/a Bankhead Railway Engineering, and Bankhead Railway Welding, Plaintiff-Appellant,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellee.**

No. 80–7483
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

April 15, 1981.

Hopkins & Gresham, Thomas P. Gresham and Patrick J. McKenna, Atlanta, Ga., for plaintiff-appellant.

Neely, Player, Hamilton & Hines, Mary Taylor Tapley and Edgar A. Neely, Jr., Atlanta, Ga., for defendant-appellee.

Before TJOFLAT, VANCE and THOMAS A. CLARK, Circuit Judges.

VANCE, Circuit Judge:

The sole issue presented on this appeal is whether the district court was correct in dismissing appellant's action for lack of personal jurisdiction. Because we conclude that Georgia law and the due process clause of the Constitution permit the exercise of jurisdiction over the Norfolk and Western Railway Company, we reverse and remand to the district court.

Appellant, Bankhead Enterprises, Inc., is a Georgia corporation which has its principal office and place of doing business within the Northern District of Georgia. Appellee Norfolk and Western Railway is a Virginia corporation which has not qualified to do business in Georgia. Norfolk and Western, however, transacts business in Georgia through its regional sales office in DeKalb County, Georgia. Appellant brought suit in the United States District Court for the Northern District of Georgia for breach of contract for railway maintenance and repair work performed in Indiana, Virginia, West Virginia, Ohio and Pennsylvania. Jurisdiction is predicated on diversity of citizenship.

Norfolk and Western filed motions to quash service and to dismiss because of invalid service, lack of jurisdiction and lack of venue. On the evidence submitted by the parties, the district court held that un-

der Georgia law, appellee was not "doing business" in the state and not amenable to suit there.

On appeal Bankhead contends that Norfolk and Western is engaged in a continuous, regular and systematic course of business within the state. Norfolk and Western leases an office in the Atlanta area and has maintained an office in that area for over seventeen years. Incident to operation of its Atlanta office, it has telephone listings in its name and owns various items of personal property including desks, typewriters and related office furniture. Employees at that location include an officer of the corporation with the title "Assistant Vice-President of Sales for the Southern Region," who is responsible for the sales activities and supervision of personnel in twelve sales offices in fourteen southern states, a regional sales manager, who is responsible for six sales offices, and a district manager, two sales representatives, an administrative assistant, two clerks and a secretary. These employees are involved in obtaining freight business for the railroad in Georgia and in the south. The true nature of appellee's activities in Georgia is the supervision and administration of the company's sales activities for its entire southern region. The sales employees do more than solicit business; they also participate in the routing of traffic controlled in Georgia but originating and terminating in other states. The railroad company receives substantial revenue from rolling stock physically located within the state.

Appellee maintains that sales solicitation is its only activity in the state of Georgia. It claims that sales solicitation for freight shipments performed outside the state is insufficient to make it amenable to suit in Georgia. When freight is solicited by Norfolk and Western's employees in Georgia, it is shipped by other railroads out of Georgia and is picked up by Norfolk and Western in other states where it operates. Additionally, appellee minimizes the responsibility of its corporate officer in Atlanta and disputes the authority of its sales representatives to contract for the railway.

■ Initially, we note that in a diversity case it is appropriate for a federal court to exercise jurisdiction over a foreign corporation if the state court may do so in compliance with state law and the due process requirements of the United States Constitution. *Standard Fittings Co. v. Sapag*, 625 F.2d 630, 636 (5th Cir. 1980); *Washington v. Norton Manufacturing, Inc.*, 588 F.2d 441, 444 (5th Cir.), *cert. denied*, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 489 (5th Cir. 1974). *See also* 4 C. Wright and A. Miller, Federal Practice and Procedure § 1075 (1969). In this case Bankhead is not seeking to establish jurisdiction based upon the Georgia Long Arm Statute.[1] Rather, it maintains that the Norfolk and Western is "doing business" in Georgia and has agents that are amenable to service of process.[2]

---

1. Ga.Code Ann. § 24–113.1 provides in pertinent part:

   A court of this State may exercise personal jurisdiction over any nonresident, . . . *as to a cause of action arising from any of the acts*, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:
   (a) Transacts any business within this State
   . . . .

   (emphasis added). This statute allows the Georgia courts to exercise jurisdiction over nonresidents as to any cause of action arising from any business transacted in the state. *See Castleberry v. Gold Agency, Inc.*, 124 Ga.App. 694, 185 S.E.2d 557 (1971). In this case there is no nexus between the business activity con-

ducted in the state and the cause of action for breach of contract. Plaintiff, however, does not rely on the Long-Arm Statute.

2. The question of service has not been raised on appeal. Nonetheless, we note that Ga.Code Ann. § 81A–104(d)(2) provides for personal service:

   If the suit is against a foreign corporation or a nonresident individual, partnership, joint-stock company or association, doing business and having a managing or other agent, cashier or secretary within this State, to such agent, cashier, or secretary or to an agent designated for service of process.
   *See also Lasky v. Norfolk and Western Ry.*, 157 F.2d 674 (6th Cir., 1946) upholding service of process on a foreign corporation "doing business" within the Northern District of Ohio.

■ We first inquire whether Norfolk and Western is subject to in personam jurisdiction in the forum state of Georgia. Although the physical presence of an individual in Georgia is sufficient for a state court to exercise personal jurisdiction, the Georgia courts require more than mere physical presence of corporate agents before finding the corporation present within the state. *Vicksburg, Shreveport & Pacific Railway v. De Bow*, 148 Ga. 738, 743, 98 S.E. 381, 384 (1919). *See also* Ga.Code Ann. § 81A–104(d)(2). The Supreme Court of Georgia in *De Bow* explained: "We are clearly of the opinion that our statute makes it necessary that the foreign corporation be 'doing business' in this State, before a valid personal judgment can be rendered against it in an action commenced by the service of process upon its agent located or resident within the State." 98 S.E. at 384. *Accord, Kirkland v. Atchison, Topeka & Sante Fe Railway*, 104 Ga.App. 200, 121 S.E.2d 411 (1961).

Georgia appellate courts have considered whether a foreign railroad corporation, not operating lines within the state, is "doing business" within the state so as to be amenable to suit. Although the cases may be distinguished on their facts from the present appeal, they illustrate the reasoning which has been applied by Georgia courts in similar situations. In *Vicksburg, Shreveport & Pacific Railway v. De Bow, supra*, the Georgia Supreme Court held that "mere solicitation" within the state did not constitute "doing business" in the jurisdictional sense. The railroad company's only contact with the state was through a general agent who was shared with two other railroad companies. His only duties were to solicit freight for the three railroads which he represented and he had no authority or responsibility beyond mere solicitation. In the more recent case of *Kirkland v. Atchison, Topeka & Santa Fe Railway, supra*, the court found other activities in Georgia in addition to solicitation, and ruled that the foreign railroad corporation was "doing business" in the state. These activities included maintaining a permanent office with a general agent who supervised eleven employees. Six of these employees acted as salesmen and had the authority to obligate the railway by selling passenger tickets. The court in *Kirkland* acknowledged the viability of *De Bow*, but found that the particular facts of the case required a different result. Our analysis of these two cases leads us to conclude that the solicitation of business in Georgia coupled with other activities constitutes "doing business" for the exercise of jurisdiction.[3]

■ Applying the reasoning of these cases, we find that the record indicates that Norfolk and Western is "doing business" in Georgia. The railway has engaged in a continuous and systematic course of business within the state for at least eighteen years. It leases office space and owns personal property in the state. It also maintains resident sales agents and clerical personnel who actively solicit business in the state. Substantial revenues are generated through customers in Georgia and from rolling stock in the state. Additionally, the

---

**3.** We also note that since the decision in *Kirkland*, the Georgia legislature has adopted its Long-Arm Statute, which has been interpreted to allow the exercise of jurisdiction over non-resident parties "to the maximum extent permitted by procedural due process." *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 60, 195 S.E.2d 399, 401 (1973). Subsequent decisions of the Georgia appellate courts have reiterated this liberal policy. *See, e. g., Clarkson Power Flow, Inc. v. Thompson*, 244 Ga. 300, 302, 260 S.E.2d 9, 11 (1979); *Brooks Shoe Mfg., Inc. v. Byrd*, 144 Ga.App. 431, 432, 241 S.E.2d 299, 300–01 (1977); *Cox v. Long*, 143 Ga.App. 182, 183, 237 S.E.2d 672, 673 (1977). *See also Shingleton v. Armor Velvet Corp.*, 621 F.2d 180, 182 (5th Cir. 1980). Although the Georgia Long-Arm Statute is not applicable here, Georgia law has now extended the jurisdiction of its courts to the maximum extent permitted by procedural due process. Exemplifying this trend is the following language from *Shellenberger v. Tanner*, 138 Ga.App. 399, 407, 227 S.E. 266, 274 (1976) explaining a requirement of the Long-Arm Statute:

> When a nonresident engages in some activity with or in the forum, even a significant single transaction, whether he be physically present there or not, and as a result business is transacted ... a jurisdictional "contact" exists between that nonresident and the forum.

railway has based its sales activity for the southern region in Atlanta and telephone listings in the state in its own name. These activities go well beyond the employment of a general agent to solicit business.

■ Our second inquiry requires a determination of whether due process permits the exercise of jurisdiction over the Norfolk and Western. The due process clause of the fourteenth amendment limits the power of a court to render a valid personal judgment against an individual or corporate defendant with which the forum state has "no contacts, ties, or relations." *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945). The "minimum contacts" of the defendant with the forum state must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. at 316 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). "When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' *Hanson v. Denckla,* 357 U.S. [235], at 253 [78 S.Ct. 1228, at 1240, 2 L.Ed.2d 1283 (1958)] it has clear notice that it is subject to suit there...." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). "[T]here have been instances in which the [corporation's] continuous ... operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *International Shoe Co. v. Washington,* 326 U.S. at 318, 66 S.Ct. at 159.[4]

■ Under the foregoing principles, the exercise of jurisdiction over the Norfolk and Western clearly meets the requirements of due process. In *Woodham v. Northwestern Steel & Wire Co.,* 390 F.2d 27 (5th Cir. 1968) this court held in a similar

case that two foreign railroad companies had minimum contacts with Florida so as to satisfy the due process requirements. The court summarized the contacts with the State of Florida as follows:

> Chicago and Gulf's contacts with Florida may be briefly summarized as follows: They are foreign corporations which have not qualified to do business in Florida. However, both companies lease office space in the state, own the office furniture and pay state taxes on that furniture. Both maintain resident business agents, who have worked in Florida for about fifteen years, and clerical personnel who actively solicit passenger and/or freight business in Florida for their respective companies. Each corporation has telephone listings in the state in its own name. The business agents for each corporation successfully generate a large volume of business for their respective railroads. We have no difficulty in finding that these contacts, of a substantial and permanent nature, are sufficient to meet the minimum contacts test of due process under the Fourteenth Amendment.

*Id.* at 29. The contacts of appellee with the state of Georgia parallel those listed by this court in *Woodham.* Its contacts are of such a "substantial and permanent nature" as to meet the minimum contacts requirement of due process. In addition, Norfolk and Western has purposefully conducted business activities in Georgia so that maintenance of suit there is fair and reasonable. *See Standard Fittings Co. v. Sapag,* 625 F.2d 630, 643 (5th Cir. 1980).

REVERSED and REMANDED.

---

4. *See Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) applying this principle. In this particular case the cause of action sued on was unrelated to the business activities of the corporation in the state; however, this is not a requirement of due process. *See Woodham v. Northwestern Steel & Wire Co.,* 390 F.2d 27 (5th Cir. 1968).

(3) The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.
33 U.S.C. § 902(3) (1976).